THE THOMAS FLETCHER.[1]

ROSS v. THE THOMAS FLETCHER, etc.[1]

*(Circuit Court, S. D. Georgia. November, 1884.)*

COSTS—REV. ST. § 750—RECORDS IN ADMIRALTY APPEALS.

The final record in cases of admiralty appeals must be such as is required by section 750 of the Revised Statutes of the United States, including the "process, pleadings, and decrees," and such record must correspond with the "judgment record" of the common law.

Admiralty Appeal. On exception of clerk to report of referees on motion to retax costs.

*Marion Erwin,* for the clerk.

*Hayward & Johnson* and *Garrard & Meldrim, contra.*

PARDEE, J. In equity and admiralty causes, "the process, pleadings, and decree" "shall be entered upon the final record," together with "such orders and memorandums as may be necessary to show the jurisdiction of the court and the regularity of the proceedings." Section 750, Rev. St. Said section applies as well to the circuit as to the district court; it is included in chapter 12 of the Revised Statutes, entitled "Provisions common to more than one court or judge," and the record therein prescribed is referred to in section 698, Rev. St., in a way that shows that it does apply to the circuit court. The "Transcript" sent up from the district court, when filed in the circuit court, becomes and is a part of the proceedings in the circuit court; and as it contains the "libel," the "process," and the "pleadings" in the cause, without which the final record in the circuit court would not "show the jurisdiction of the court, and the regularity of the proceedings," it would seem such pleadings and process must be recorded, by the express provisions of section 750, Rev. St.

The referees, in their finding on this point, take the view that as the process and pleadings contained in the "Transcript" were recorded in the court below, there is no necessity for the same to be recorded in the circuit court; and, viewing the matter from the standpoint of economy, they avoid the provisions of section 750, Rev. St., by interpolating into it the words "originating in said court," so as to make it read, by intendment, "In equity and admiralty causes (pending in any court) only the process, pleadings, and decree, (originating in said court,) etc., shall be entered on the final record." It is clear that no such meaning can be fairly inferred from the words of the statute itself, and the idea of reducing costs is all that can be urged in favor of such a construction.

Admiralty causes do not come up to the circuit court as a court of error, but of appeal, and the proceedings are had in the circuit court as if the cause proceeded *de novo;* the process and pleadings of the

---

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

district court becoming the process and pleadings of the circuit court, the circuit court executing its own decrees; all decrees in the district court being vacated by the appeal. See *The Lucille,* 19 Wall. 73; *The Grotius,* 1 Gall. 503; *The Wanata,* 95 U. S. 600; *The Lottawanna,* 20 Wall. 201. The importance of having its entire proceedings recorded is, therefore, not to be measured by the rules and practice in courts of error, which remand cases to lower courts after correcting errors of law, and which do not execute their own decrees.

The circuit court is a court of record. The very fact that a writ of error lies to it would be sufficient to establish that. 3 Bl. Comm. 406; 1 Mass. 510. Blackstone says that a court of record is "a court where the acts and proceedings are enrolled in parchment for a perpetual memorial and testimony." 3 Bl. Comm. 24. The "final record" of our courts corresponds with the "judgment record" of the common law,—the record "*in perpetuam rei memoriam,*" a complete set of which, it is said, has been handed down in the English courts from the time of Richard II. The importance of the final record in our courts in all cases a few years old, where loose papers are constantly being misplaced, is too well known to be argued. In some cases of importance disposed of in this court, even since the late war, the "final record" is all that is left from which the questions determined by the litigations can be determined.

The "final record" of the circuit court ought not to be left incomplete in appeal cases, because of a few dollars' cost, and force the public to go to the records of the district court to find out upon what pleadings and issues the circuit court acted when it made and executed its decrees. It might save a few dollars to litigants, but outside innocent parties are the usual sufferers from a failure to record important papers.

The government does not charge litigants for the services of its judges and juries, but it does provide that the clerk's office shall be made self-sustaining by making its revenues derivable, in part, at least, by recording the suits litigated, (many other services in the case being performed by the clerk without compensation,) so that the record answers the double purpose of protecting the public by standing as a perpetual memorial of the questions litigated, and also of furnishing the fees of the clerk for making it, which, if the clerk's fees exceed his maximum, goes to the United States, and is a part of the tax imposed upon litigants to support the judiciary. For this reason the law does not make it optional with the litigants whether or not the records shall be made. The recording being required by law, the charge of 15 cents per folio is legal and proper. Section 828, Rev. St.

It is therefore ordered that the exception of H. H. King, clerk, to the referee's report be sustained, and that the said clerk be allowed to collect his proper fees for final record in the present cases from the fund in the registry of the court to the credit of such cases.