GILLUM et al. v. STEWART et al.

(Circuit Court, N. D. Texas.  November 25, 1901.)

No. 9.

1. CLERKS OF UNITED STATES COURTS—ISSUANCE OF PROCESS—EFFECT OF CUSTOM.

The fact that the clerk of a circuit court has uniformly for many years followed the practice of issuing a separate citation for each defendant does not give it the sanction of law, nor bind the court to its approval, where it does not appear to have ever been brought to the court's attention.

2. FEDERAL COURTS—CONFORMITY ACT—FORM OF PROCESS.

Rev. St. § 914, requiring the federal courts to conform as near as may be to the "practice, pleadings, forms and modes of proceedings" of the state courts in civil actions at law, applies to the forms of process for the commencement of suits, except as to the signature; and a provision of a state statute that but one citation shall be issued to each county in which defendants reside is one in the interests of economy, and entirely practicable to be followed by the federal courts.[1]

3. CLERK'S COSTS—ESTOPPEL TO OBJECT TO TAXATION—CUSTOM.

A plaintiff in a federal court in an action at law, who prays for the "usual process," has a right to rely on the presumption that such process will conform to that provided by the state statutes, unless the court has altered the form to meet conditions different from those existing in the state courts; and he is not estopped to object to the taxation of costs for the issuance of process not authorized by such statutes because it has been the practice of the clerk to issue the same.

4. SAME—FILING AND CANCELING ATTORNEY'S RECEIPTS FOR FILE PAPERS.

Where, by the prevailing practice in a federal court, attorneys are permitted to withdraw file papers, giving a receipt therefor, the clerk is entitled to charge the usual fee for filing such receipts as papers in the cause, and for canceling the same on the return of the files. He is also entitled to file a letter from an attorney asking the issuance of subpœnas for his own protection, and to charge for such filing.

On Motion to Retax Clerk's Costs.

Greene & Stewart, for the motion.

Chas. H. Lednum, for the clerk.

[1] Conformity of practice of federal courts in common-law actions to that of state court, see notes to O'Connell v. Reed, 5 C. C. A. 594, and Insurance Co. v. Hall, 27 C. C. A. 392.

MEEK, District Judge. The plaintiff, in his motion, complains of the taxation of the clerk's costs in the above-styled cause. The objections urged to the taxation of the clerk's costs will be noted separately.

The plaintiff first complains that there were 18 defendants named in plaintiff's petition, all alleged to reside in Parker county, Tex., and that the clerk issued 18 original citations and 18 copies,—an original and a copy for each of the defendants,—when he should have issued but 1 original citation and 18 copies, and that for each of said original citations the clerk has charged $1, making his charges for issuing citations $18, instead of $1, as it should have been. The clerk, answering the above objections, avers that separate citations were issued to each defendant in the case because the same is required and authorized by law, in that (a) the uniform and heretofore unquestioned practice, usage, and custom in this court since its creation by congress, in 1879, has been to so issue process of this court; and (b) plaintiff, at the time of the filing of the original petition, charged with the knowledge of practice, usage, and custom of the court, did not request or instruct any change in the practice and procedure, but in the prayer for process in the original petition used the following words: "Petitioners pray the usual process hereof, and for judgment against each of said defendants."

Section 914 of the Revised Statutes of the United States provides:

"The practice, pleadings, forms and modes of proceeding in civil causes other than equity and admiralty causes, in the circuit and district courts, shall conform, as near as may be, to the practice, pleadings, forms and modes of proceeding existing at the time in like causes in the courts of record of the state within which said circuit and district courts are held, any rule of court to the contrary notwithstanding."

Article 1212 of the Revised Statutes of the State of Texas provides:

"When a petition shall be filed with the clerk and the other regulations hereinafter prescribed shall be complied with, it shall be his duty forthwith to issue a writ of citation for the defendant." Act Feb. 5, 1854, p. 53 (Pasch. Dig. 1430).

Article 1213 of the Revised Statutes of the State of Texas provides:

"If there be several defendants residing in different counties, one citation shall issue to each of said counties."

Article 1430 of Paschal's Digest, as it originally appeared, read as follows:

"(9) It shall be the duty of the clerk, when a petition is filed, and the regulations hereinafter provided are complied with, to issue a writ or citation directed to the sheriff (or other proper officer) of the county or counties in which the petition alleges that the defendants are, requiring him to summon the defendants to appear at the proper term of court, then and there to answer plaintiff's petition, a certified copy of which shall accompany each writ or citation; and if there be more than one defendant, the clerk shall issue a writ or citation to each, accompanied with a copy of the petition."

The clerk urges in argument that at the time the Northern district of Texas was organized the provisions of article 1430 of Pas-

chal's Digest were in force, and that, complying therewith, the clerk, in causes where there were more than one defendant, issued a writ of citation to each, accompanied by a copy of the petition. He states that ever since the organization of the district this practice has obtained, notwithstanding the adoption of the Revised Statutes of the State of Texas of 1879, which provides that where there are several defendants, residing in different counties, only one citation shall issue to each of said counties. It is urged that by reason of the fact that this has been the uniform and heretofore unquestioned practice, usage, and custom of this court since its creation by congress, in 1879, it therefore forms the law of the court. So far as the oral argument and submitted briefs disclose, the practice now under investigation has never been under judicial observation in this district, and therefore has never been passed upon by the court. It would seem that the practice as it has obtained in the matter of issuing citations in civil causes has gone unchallenged by any litigant in this court until the present time. The fact that the clerk, in his ministerial capacity, has issued process in the manner he has even for so long a term of years does not in itself endow his method with the sanctity of law. It is true, he has performed his ministerial functions with the seeming acquiescence of the court, but it is apparent from the record in this case that the court has never been moved to investigate and pass upon this method of proceeding. When the court is first moved, should it deem itself estopped from action, and its mode of procedure settled and fixed, by the ministerial acts of its clerk? I think not. The provisions respecting 914, Rev. St. U. S., include forms of process for commencement of suits, except as to signature, which is provided for by section 911, Id. Brown v. Pond (D. C.) 5 Fed. 37; Ricard v. Inhabitants of New Providence, Id. 434. In the case of Nudd v. Burrows, 91 U. S. 426, 23 L. Ed. 286, Mr. Justice Swayne, delivering the opinion of the court, says of section 914:

"The purpose of the provision is apparent on its face. No analysis is necessary to reach it. It was to bring about uniformity in the law of procedure in the federal and state courts of the same locality. It had its origin in the Code enactments of many of the states. While in the federal tribunal the common-law pleadings, forms, and practice were adhered to, in the state courts of the same district the simpler forms of the local Code prevailed. This involved the necessity on the part of the bar of studying two distinct systems of remedial law, and of practicing according to the wholly dissimilar requirements of both. The inconvenience of such a state of things is obvious. The evil was a serious one. It was the aim of the provision in question to remove it. This was done by bringing about the conformity in the courts of the United States which it prescribes. The remedy was complete."

The purpose of the enactment is clearly beneficial and salutary. Its observance has resulted advantageously to courts, bars, and litigants. By its terms it only assimilates the practice in the federal courts to that of the state courts "as near as may be." Whalen v. Sheriden (C. C.) 10 Fed. 662. It is not as near as may be possible, nor as near as may be practicable. This indefiniteness gives the judge power to reject any subordinate provision which in his judgment will unwisely incumber the administration of the law, or

tend to defeat the ends of justice. Railroad Co. v. Horst, 93 U. S. 291, 23 L. Ed. 898; Hat Sweat Mfg. Co. v. Davis Sewing Mach. Co. (D. C.) 31 Fed. 296.

Article 1213, Rev. St. Tex., heretofore quoted, provides that, where there are several defendants residing in different counties, one citation shall issue to each of such counties. The supreme court of Texas has held that two or more defendants residing in the same county may be included in one citation. Carson v. Dalton, 59 Tex. 500. The Texas legislature, in adopting the provision in relation to the issuance of one citation to a county where several defendants to an action reside, to that extent altering the provisions of article 1430 of Paschal's Digest, undoubtedly moved in the interest of economy, and to decrease the costs of litigation. The provision is not impracticable, and materially assists in the direction intended, as is made manifest in the case now under consideration. Here 18 defendants in a suit resided in Parker county, Tex. Eighteen original citations were issued by the clerk, and 18 copies thereof; an original and copy being served on each of the defendants. The clerk's costs for this method of procedure were $18, whereas, if the provision of the Texas statute had been followed, it would have resulted in costs to the clerk of $1. I am not prepared to say that by following the provision of the Texas law with respect to the service of citation the administration of the law in this court would be unwisely incumbered, or that the ends of justice would tend to be defeated, and consequently a different method, more expensive in its operation, should be adhered to. I cannot see any difference between the sheriff of a county taking in hand an original citation, with several defendants named therein, and serving same in turn upon each of the defendants, and making his return thereon, and the United States marshal going into a county with a citation having several defendants' names therein, and serving same on each in turn, and making his return thereon. There is no greater convenience, expedition, or certainty resulting from the present mode of procedure than from that laid down by the Texas law.

It is urged that the plaintiffs herein should be estopped from complaining of the action of the clerk, because at the time of the filing the original petition, being charged with the knowledge of the practice, usage, and custom of the court, they did not request or instruct any change in the practice and procedure, but in the prayer for the process in the original petition used the following words: "Petitioners pray the usual process hereof, and for judgment against each of said defendants." Litigants filing their cases in this court have a right to pray for the usual process to issue in their cases, and to rely upon the presumption that the usual process of this court is the process provided by the Revised Statutes of the State of Texas in civil causes, and not process peculiar to this court, unless it has been necessary to alter the form of process in order to meet conditions different from those existing in state courts of record. No sufficient reason has been presented to the court for the variance in the practice now existing between the fed-

eral and state courts with respect to the matter under investigation. The first objection of plaintiffs to the taxing of the clerk's costs is sustained, and the costs for but one citation, including the names of all of the defendants in said cause, will be allowed the clerk. It being necessary to issue but one citation, instead of 18 citations, it follows that it was necessary to file but one citation; and therefore the clerk will be allowed for the filing of but one citation, and the fees for the filing of the remaining 17 citations will be disallowed. The clerk will be allowed for entering return on one citation, and will be disallowed for entering the return on the remaining 17 citations.

The third contention of the plaintiffs, to the effect that the clerk has charged $1.80 more for copy of plaintiffs' petition than allowed by law for copies issued with certificate and seal, is not well taken, as will be evidenced by an examination and count of the folios of plaintiffs' petition.

The plaintiffs' objection to the charge for making of final record in said cause is not well taken, as the making of such final record is required of the clerk by a standing rule of this court entered November 22, 1887. Also see The Thomas Fletcher (C. C.) 24 Fed. 481.

The court is of the opinion that the charge made by the clerk for filing attorneys' receipts for file papers in the case, which are being withdrawn from the clerk's office, and for canceling receipt on return of papers, is a proper charge, and one which should be allowed. It is proper that a receipt which remains in the clerk's office in lieu of the file papers of the case should be a file paper, and that the clerk should not be compelled to prepare or care for that paper or cancel same without being compensated therefor at the legal rate. A receipt for the file papers in a case, under the system which prevails in Texas of permitting attorneys to withdraw file papers from the court, proves often a record of great value in determining important rights of parties on both questions of merit and procedure.

Complaint is made of the charge of 25 cents for filing and entering plaintiffs' petition, it being alleged that the law allows but 10 cents for this service. The clerk avers that under the practice of this court he is required to enter upon the file docket certain memoranda, one of which is the number, style, etc., of the case, and that a fee of 15 cents is allowable therefor under the law. This service is exacted of the clerk by the method of procedure and practice obtaining in this court, and legal allowance is therefore permissible and right. The court is of the opinion that it is proper for the clerk to make a file paper of a letter from one of the parties asking for the issuance of subpœnas, as this is for the protection of the clerk and all parties at interest; also that the charges in this case for the entering of return upon a subpœna, for the filing of complete draft of judgment, and for the issuance of the first and alias writs of possession, were proper and correct.

The costs in this case will be retaxed in accordance with the views herein expressed.